IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 01-291-2 |
| | ) |
| LAWRENCE A. SKIBA | ) |

O P I N I O N

DIAMOND, D.J.

Presently before the court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 (Document No. 367) filed by Lawrence A. Skiba ("petitioner"). Because petitioner failed to file his motion within the one-year limitation period applicable to §2255 motions, and the court finds no basis for statutory or equitable tolling, petitioner's motion will be denied.[1]

On August 29, 2002, a grand jury returned an eight-count second superseding indictment charging petitioner with mail fraud, conspiracy to commit mail fraud and two counts of interstate murder for hire.[2] In addition, the second superseding indictment set forth numerous special findings which could justify the imposition of a sentence of death

---

[1] Petitioner has filed several other related motions. His motion for an evidentiary hearing (Document No. 370) will be denied as the court finds that no evidentiary hearing on petitioner's motion is required under Rule 8(a) of the Rules Governing §2255 Proceedings. Where the record affirmatively indicates that a movant's claim for relief is without merit, the claim may be decided on the record without a hearing. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985); Page v. United States, 462 F.2d 932, 933 (3d Cir. 1972). Here, the record affirmatively establishes as a matter of law that petitioner's claim for relief is time barred and there is no basis for tolling. Petitioner's motion to expand the record (Document No. 369) and motion for leave to amend/supplement his §2255 motion (Document No. 371) also will be denied. Petitioner's motion to proceed (Document No. 378) will be denied as moot.

[2] Petitioner originally was indicted in a four-count indictment charging him and a co-defendant with mail fraud and conspiracy to commit mail fraud. A superseding indictment later was filed recharging both defendants with the four counts set forth in the original indictment and adding two additional counts of mail fraud against petitioner only. The second superseding indictment recharged the six counts set forth in the superseding indictment and added two counts of murder for hire against petitioner only.

pursuant to the Federal Death Penalty Act of 1984 ("FDPA"), 18 U.S.C. §§3591 et seq. The government subsequently filed a notice of intent to seek the death penalty against petitioner pursuant to §3593(a) of the FDPA.

On June 3, 2004, petitioner entered a plea of guilty to the two counts of murder-for hire charged in the second superseding indictment. Pursuant to the parties' written plea agreement, the government agreed to withdraw the notice of intent to seek the death penalty. Petitioner subsequently testified, under oath, as to his involvement in the murder-for-hire scheme at the trial of Eugene DeLuca, whom petitioner identified as the triggerman he had hired to murder Robert Cooper. Following a jury trial, DeLuca was convicted of interstate murder-for-hire.

On March 22, 2005, petitioner was sentenced to a term of imprisonment of 240 months.[3] Petitioner then filed a direct appeal to the United States Court of Appeals for the Third Circuit. On April 28, 2006, the appellate court affirmed petitioner's conviction and sentence. Petitioner did not file a petition for writ of certiorari in the United States Supreme Court.

Over three-and-a-half years after his conviction and sentence were affirmed, petitioner filed the pending §2255 motion asserting a number of grounds for relief: (1) he was improperly advised to plead guilty to murder-for-hire when he was innocent of that crime; (2) he was given incorrect advice regarding his guilty plea and potential sentence; (3)

---

[3] Petitioner was facing a statutory mandatory sentence of life imprisonment at each of the two murder-for-hire counts, 18 U.S.C. §1958(a), and his advisory sentencing range under the guidelines was 292 to 365 months. In light of the government's motion pursuant to U.S.S.G. §5K1.1, and considering the relevant factors under 18 U.S.C. §3553(a), the court concluded that a sentence of 240 months was sufficient, but not greater than necessary, to comply with the purposes of sentencing.

his trial counsel was ineffective; (4) his appellate counsel was ineffective; and, (5) his sentence was "too long."

Upon review of petitioner's motion and supplement to his motion, as well as the government's response, this court finds that petitioner's failure to file his petition within the one-year limitation period applicable to §2255 motions renders his motion untimely and that there is no basis for either statutory or equitable tolling of the limitation period.

Section 2255 motions are subject to a one-year period of limitation established by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"); Kapral v. United States, 166 F.3d 565, 567 (3d Cir. 1999). Generally, the limitation period begins to run on "the date on which the judgment of conviction becomes final." 28 U.S.C. §2255(f)(1).

Here, petitioner's judgment of conviction became final on July 27, 2006, upon the expiration of the ninety-day period in which he had to file a petition for certiorari to the United States Supreme Court from the decision of the Third Circuit Court of Appeals affirming his judgment and conviction. Clay v. United States, 537 U.S. 522, 527 (2003)(if petitioner does not seek certiorari in the United States Supreme Court, judgment of conviction becomes final when time for seeking certiorari review expires); United States v. Davies, 394 F.3d 182, 186 n. 2 (3d Cir. 2005).

Accordingly, the limitation period for petitioner to file a §2255 motion expired on July 27, 2007. However, petitioner did not file his pending §2255 petition until January 29, 2010, more than three-and-a half years after his judgment of conviction became final and over two-and-a-half years after the limitation period had expired. Accordingly, absent a basis for either statutory or equitable tolling of the

limitation period, petitioner's motion is time-barred under §2255(f).

As to statutory tolling, the AEDPA provides three enumerated bases for tolling of the one-year limitation period from the date on which the judgment of conviction becomes final to the latest of:

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).

Petitioner seeks tolling of the limitation period under subsection (2) and subsection (4). However, the court finds no basis to toll the limitation period under either of those subsections.[4]

Petitioner first argues that he is entitled to tolling of the limitation period under §2255(f)(2). Specifically, he contends that the Bureau of Prisons and/or the United States Marshals lost his legal documents, including correspondence with his counsel, transcripts, legal research, discovery and a "skeletal" §2255 motion, in November of 2006, and that the failure of "the government" to replace these lost items created an impediment to his timely filing of his §2255 motion. The court finds no merit to this argument.

---

[4] Petitioner does not allege, nor can the court discern, any facts which might trigger tolling under §2255(f)(3) based on a newly recognized right by the Supreme Court made retroactively applicable to cases on collateral review.

Petitioner has cited no authority suggesting that the misplacement, or even confiscation, of documents by the Bureau of Prisons constitutes the type of "governmental action" impeding timely filing contemplated by §2255(f)(2). Petitioner does not allege any intentional misconduct or that any governmental entity actively prevented him from timely filing a §2255 motion. While there is case law on the issue of whether the misplacing or confiscation of documents by prison officials may be grounds for equitable tolling, which the court will address below, the court does not believe that petitioner's allegations that the Bureau of Prisons lost his papers are sufficient to create a basis for statutory tolling under §2255(f)(2).

Moreover, petitioner has failed to establish how the missing documents "impeded" his ability to file a timely §2255 motion, or even that the documents were necessary to raise his asserted claims. Indeed, petitioner concedes that he still did not have the documents at the time he finally did file his §2255 motion. As petitioner ultimately was able to file his §2255 motion without the missing documents, the absence of the documents created no impediment to him filing the motion timely.

Nor is petitioner entitled to statutory tolling under §2255(f)(4), which tolls the limitation period to "the date which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Here, the constitutional claims raised by petitioner challenge the validity of his guilty plea, the effectiveness of his trial and appellate counsel and the reasonableness of his sentence. Petitioner has asserted no new facts supporting any of these claims which were not available to him prior to the expiration

of the one-year limitation period.[5] Accordingly, the court finds no basis for statutory tolling based on newly-discovered facts.

Petitioner also seeks equitable tolling of the one-year limitation period, arguing that the misplacing of his documents by the Bureau of Prisons and his inability to have them replaced, either by the Bureau of Prisons or his defense counsel, constitutes an "extraordinary circumstance" that prevented him from timely filing his §2255 motion. The court finds no basis for equitable tolling in this case.

The AEDPA's limitation period is not jurisdictional and may be equitably tolled in appropriate circumstances. Holland v. Florida, ___ U.S. ___, 130 S.Ct. 2549, 2560 (2010)(§2254 case); Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 619 n. 1 (3d Cir. 1998)(equitable tolling applies to one-year limitation period under §2255(f) just as it does to limitation period under 28 U.S.C. §2244(d)(1)). However, "'courts must be sparing in their use of equitable tolling'" and "should do so 'only when the principles of equity would make the rigid application of a limitation period unfair.'" Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012)(citations omitted).

Accordingly, in this circuit, a finding of equitable tolling is proper only in "extraordinary" and "rare" circumstances, such as where:

---

[5] Although petitioner does allege that "new information became available to [him] regarding co-defendant Barb Strager" on April 2, 2009, this information does not relate to any of his constitutional claims but instead relates to his contention that he is innocent of the crime of murder-for-hire. However, while "actual innocence" has been recognized "as a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits," Schlup v. Delo, 513 U.S. 298, 315 (1995), a stand-alone claim of actual innocence based on newly-discovered evidence is not a ground for federal habeas relief. Herrera v. Collins, 506 U.S. 390, 400 (1993). Because petitioner's asserted "new information" relates solely to his allegation of actual innocence, and he has not asserted any new facts supporting his constitutional claims for relief, he is not entitled to statutory tolling under §2255(f)(4). To the extent petitioner seeks equitable tolling of the limitation period based on his assertion of actual innocence, the court will address that issue below.

(1) the government has actively misled the petitioner; (2) where the petitioner has in some extraordinary way been prevented from asserting his rights; or, (3) where the petitioner timely asserted his rights mistakenly in the wrong forum. Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).

In this case, there are no allegations that anyone has actively misled petitioner or that he timely asserted his rights mistakenly in an improper forum. Thus, petitioner would be entitled to equitable tolling only upon a showing that he has in some extraordinary way been prevented from asserting his rights.

Generally, a petitioner is entitled to equitable tolling of the AEDPA's one-year limitation period if he can show: (1) that some extraordinary circumstance stood in his way and prevented timely filing; and, (2) that he has been pursuing his rights diligently. Munchinski v. Wilson, 694 F.3d 308, 329 (3d Cir. 2012). This conjunctive standard requires a showing of *both* elements before equitable tolling will be permitted. Sistrunk, 674 F.3d at 190.

Here, defendant can show neither. First, petitioner cannot show that the loss of his legal documents constitutes an "extraordinary circumstance" which would permit equitable tolling. Numerous courts in this circuit have held that the deprivation of legal documents does not constitute an extraordinary circumstance justifying equitable tolling, particularly where the petitioner ultimately was able to file his petition without the missing documents. See, e.g., Satterfield v. Johnson, 434 F.3d 185, 196 (3d Cir. 2006)(where petitioner ultimately is able to file petition, with or without having received replacement materials, deprivation of legal documents does not justify equitable tolling); Cooper v. Price, 82 Fed. Appx. 258, 261 (3d Cir.

2003)(confiscation of legal documents from prisoner's cell did not equitably toll statutory limitation period where petitioner ultimately filed petition without benefit of materials); Holmes v. Vaughn, 2003 WL 23112383 (E.D.Pa., Nov. 25, 2003)(even if petitioner did not have his legal papers as he claimed, he failed to demonstrate that in some extraordinary way he had been prevented from filing a timely basic *pro se* habeas petition); United States v. Bronson, 2009 WL 1813177 (W.D.Pa., June 25, 2009)(same).

Likewise, in this case, petitioner cannot show that the missing documents created an extraordinary impediment to his ability to timely file a basic §2255 motion. As he ultimately filed his motion without the missing documents long after the limitation period expired, there is no reason he could not have filed his motion without them prior to the expiration of the limitation period. Moreover, as already noted, petitioner has not made any showing that any of the missing documents were necessary in order for him to raise his constitutional claims.

Petitioner also alleges that the refusal of his attorneys to provide him with replacement documents constitutes an extraordinary circumstance. However, even accepting that allegation as true,[6] such a refusal would not constitute an extraordinary circumstance sufficient to justify equitable tolling. Petitioner has made no showing that his

---

[6] Although petitioner alleges that his attorneys refused to provide him with his file, petitioner's brief includes as exhibits two letters that petitioner received from his trial counsel, Assistant Federal Public Defender Jay Finkelstein, indicating that his attorneys in fact were attempting to retrieve petitioner's file and provide it to him. The first is dated May 18, 2009, and references a letter that petitioner had sent dated April 27, 2009. AFPD Finkelstein advised petitioner in this letter that petitioner's file was in storage but that he would attempt to retrieve the documents that petitioner had requested. A second letter from AFPD Finkelstein dated July 23, 2009, reiterates that he and Attorney Jay McCamic were in the process of searching for the documents petitioner had requested. The court notes that both of these letters, as well as petitioner's request for documents referenced in those letters, are well-beyond the expiration of the limitation period.

former attorneys had any duty to replace his documents, and, even if it could be argued that such a duty existed, it is well-settled that in non-capital cases, attorney non-feasance, or even malfeasance, is not an extraordinary circumstance which justifies equitable tolling. See, e.g., Schlueter v. Varner, 384 F.3d 69, 76 (3d Cir. 2004); United States v. Bass, 268 Fed. Appx. 196, 199 (3d Cir. 2008).

Nor can petitioner establish that he pursued his rights diligently. The record establishes that petitioner was made aware of the one-year limitation period by his appellate counsel, R. Damien Schorr, on May 1, 2006, in a letter notifying petitioner that his sentence had been affirmed on direct appeal. Attorney Schorr outlined several options for petitioner, including the filing of a §2255 motion. The letter advised petitioner of the one-year limitation period and explicitly cautioned him that the limitation period "must be rigorously followed."

On June 27, 2008, nearly a year <u>after</u> the limitation period already had expired, petitioner filed in this court a motion to proceed without prepayment of fees and a motion to appoint counsel for the purpose of filing a §2255 motion. Although there is no filing fee for a §2255 motion, the court nevertheless granted petitioner's motion to proceed without prepayment of fees. However, the court denied petitioner's motion to appoint counsel, finding that the interests of justice would not require the appointment of counsel "particularly in light of the fact that [petitioner's] motion in all likelihood will be time-barred, absent equitable tolling." Despite being granted leave to proceed, petitioner did not file a §2255 motion at that time.

In March of 2009, petitioner sent two letters to the clerk's office which he requested to be construed as "motions" and which the clerk's office filed as "motions for documents." The first of these motions had

two attachments: (1) a copy of a letter that petitioner had sent to Assistant Federal Public Defender ("AFPD") Jay Finkelstein dated March 9, 2009, almost a year-and-a-half after the expiration of the limitation period, requesting his "entire legal file;" and, (2) a copy of a letter petitioner had received from the United States Department of Justice, Office of Information and Privacy regarding that office's receipt of petitioner's "administrative appeal from the action of the Executive Office for United States Attorneys" on March 3, 2009. The specifics of what petitioner's appeal entailed are unclear from the letter.

The second "motion for documents" is dated March 23, 2009, and includes four attachments: (1) petitioner's letter dated March 21, 2009, to the administrator of FDC-Miami which indicates that petitioner had filled out forms relating to his lost documents and requested an update on the status of his property; (2) petitioner's letter to AFPD Finkelstein dated September 9, 2005, requesting copies of the transcripts of his plea and sentencing hearings; (3) petitioner's letter dated October 11, 2005, to Attorney Damien Schorr requesting copies of certain sealed documents; and, (4) petitioner's letter to AFPD Michael Novara dated March 24, 2006, following up on a previous letter he had sent on February 21, 2006, requesting his file. The court denied these "motions for documents" on April 27, 2009, noting that petitioner still had not filed a §2255 motion and there was nothing pending before the court. Not until over 10 months later did petitioner finally file his motion, two-and-a-half years after the expiration of the limitation period.

Based on the record, the court cannot conclude that petitioner acted with due diligence in pursuing his §2255 rights. Although petitioner alleges that his legal documents were lost in November of

2006 - 9 months before the limitation period was set to expire in July of 2007 - there is nothing in the record to suggest that petitioner actively sought replacement of these documents prior to the expiration of the limitation period. Rather, the evidence shows that all of petitioner's requests for documents were made either prior to the time his documents were lost or long after the expiration of the limitation period.

Specifically, the record contains 3 letters that petitioner sent to his trial and/or appellate attorneys between September of 2005 and February of 2006, while his direct appeal still was pending and anywhere from 9 months to over a year before his papers purportedly were lost by the Bureau of Prisons. The record also contains petitioner's letters to AFPD Jay Finkelstein dated March 9, 2009, and to FDC-Miami dated March 21, 2009, both well beyond the expiration of the limitation period in July of 2007. There is nothing in the record, however, that shows that petitioner made any attempts to obtain the missing documents, or replacement materials, between the time they were lost in November of 2006 and the requests made in March of 2009.

Based on the evidence, the court cannot find that petitioner acted with due diligence. Instead, the record shows that petitioner did not begin inquiring into the status of his lost documents or seeking replacement materials until at least March of 2009, nearly two years after the expiration of the limitation period, and shortly after this court had indicated that a §2255 motion most likely would be untimely absent equitable tolling.

Because petitioner has demonstrated neither "extraordinary circumstances" nor due diligence, he is not entitled to equitable tolling of the limitation period. Lastly, to the extent petitioner asks

AO 72
(Rev. 8/82)

- 11 -

this court to equitably toll the limitation period because he is "actually innocent" of the underlying charge of murder-for-hire, the court finds that petitioner likewise is not entitled to equitable tolling on this ground.

As noted above, a claim of "actual innocence" has been recognized "as a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Schlup, 513 U.S. at 315. However, while the actual innocence doctrine applies in the context of procedurally <u>defaulted</u> claims, neither the Supreme Court nor the Third Circuit Court of Appeals has yet to recognize that the AEDPA's limitation period can be equitably tolled on the basis of actual innocence. United States v. Davies, 394 F.3d 182, 191 n. 8 (3d Cir. 2006)(reserving the question); Horning v. Lavan, 197 Fed. Appx. 90, 93 (3d Cir. 2005)("we have yet to hold that the AEDPA statute of limitations can be tolled on the basis of actual innocence.")

Even if the court were to assume that the actual innocence doctrine could serve as a basis for equitable tolling, defendant nevertheless would not be entitled to the benefit of that doctrine here. In order to establish "actual innocence," a movant must: "(1) assert 'new reliable evidence - whether it be exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial ...; and, (2) prove that 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Faines v. United States, 808 F.Supp. 2d 708, 713 (D. Del. 2011)(citations omitted).

Here, petitioner alleges that "new information has become available regarding co-defendant Barbara Strager" which "clearly shows that no

AO 72
(Rev. 8/82)

- 12 -

reasonable juror could, or would, convict him [of murder-for-hire]."[7] Although petitioner refers to "affidavits" the only evidence he has submitted to support this new information is a letter, written and signed by petitioner himself, attached to his §2255 supplement. The crux of this "new information" appears to be petitioner's allegation that Eugene DeLuca "did not travel interstate for the express purpose of murdering Robert Cooper" but instead came to Pennsylvania in order to commit an armed robbery with Charles Foster and Barbara Strager.[8]

The court finds that the foregoing new evidence falls woefully short of proving petitioner's actual innocence. Proving actual innocence based on new evidence requires the petitioner to demonstrate: (1) new evidence; (2) that is reliable; and, (3) so probative of innocence that no reasonable juror would have convicted the petitioner. Sistrunk, 674 F.3d at 191.

Even assuming the evidence is "new" it is not reliable. Petitioner has submitted nothing but a self-serving statement in the form of a letter bearing his own signature. The statement is not notarized, does not appear to have been made under oath, bears no signature of any witness and is unsupported by any corroborating evidence of any kind. Petitioner does not identify any "trustworthy eyewitness" nor refer to any physical evidence supporting his assertions. In short, nothing has been presented to the court regarding petitioner's "new information" providing the slightest indicia of its reliability.

---

[7] The court notes that Barbara Strager was not a "co-defendant" in either the criminal case against petitioner or the one against Eugene DeLuca.

[8] Defendant also makes mention in his letter that "mileage on the rental car" will show that DeLuca "arrived at the Strager/Foster residence" on December 5, 2000, and "did not depart the State of Pennsylvania until [December 8, 2000]." It is unclear what the significance of this purported evidence may be in light of the fact that Cooper was killed on December 8, 2000.

Nor is the evidence probative of petitioner's innocence. Actual innocence means factual innocence, not mere legal sufficiency. <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998). In other words, "'actual' innocence ... means that the person did not commit the crime." <u>United States v. Garth</u>, 188 F.3d 99, 107 (3d Cir. 1999)(citation omitted).

Here, petitioner appears to be suggesting that no reasonable juror could find him guilty of murder-for-hire based on his bald assertion that DeLuca "did not travel in interstate commerce for the express purpose of murdering Robert Cooper," but because "DeLuca, Charles Foster and Barbara Strager were going to <u>do</u> <u>another</u> armed robbery." (petitioner's emphasis). However, while the offense of murder-for-hire in violation of 18 U.S.C. §1958(a) does require that the interstate travel have occurred to facilitate or further the commission of the murder, the commission of the murder need not have been the only reason, or even a principal reason, for the interstate travel, as long as it was <u>one</u> of the reasons for the travel. See <u>Modern Federal Jury Instructions, Criminal</u>, Instruction 60-15. Thus, a rational juror could find petitioner guilty under §1958(a) so long as <u>one</u> of the reasons for DeLuca's interstate travel was to commit the murder of Robert Cooper, even if DeLuca also may have had another purpose for the travel.

Additionally, in order to prove a claim of actual innocence, petitioner bears the burden of proving that, in light of <u>all</u> the evidence, it is more likely than not that no reasonable juror would have convicted him. <u>United States v. Garth</u>, 188 F.3d 99, 107 (3d Cir. 1999); <u>Bousley v. United States</u>, 523 U.S. 614 (1998). In this case, the evidence of petitioner's culpability is overwhelming. As summarized in this court's memorandum order and tentative findings and rulings dated February 3, 2005, the evidence shows that:

On the eve of his scheduled trial, petitioner agreed to enter a guilty plea and to cooperate with investigators. He told investigators that he had taken out two life insurance policies on Cooper after Cooper had borrowed $35,000 from him and failed to repay the money. These policies were taken out without Cooper's knowledge. Petitioner also told investigators that he had contacted DeLuca to discuss having Cooper killed. He stated that DeLuca had agreed to do the hit for $25,000, and petitioner thereafter made arrangements for DeLuca to stay at the Palace Inn. When DeLuca arrived in Monroeville from his home in Chicago, he and petitioner went to the doughnut shop where petitioner "marked" Cooper as the individual DeLuca was to kill.

On December 8, 2000, petitioner met DeLuca at the Palace Inn and they took separate vehicles to Tom Clark Chevrolet, where DeLuca parked his rental car. Petitioner then drove DeLuca to the Ames Department Store parking lot in the Olympia Shopping Center where DeLuca had arranged to meet Cooper, purportedly to look at a car Cooper was trying to sell. Petitioner dropped off DeLuca and parked a short distance away. When Cooper arrived, he and DeLuca looked at the car, then drove off. When they returned, they drove to the back part of the lot. Petitioner told investigators that he heard two "pops" from inside the vehicle then watched as DeLuca exited the vehicle and then fired three more shots into Cooper. DeLuca proceeded to enter petitioner's truck for the getaway. Petitioner stated he subsequently paid DeLuca $20,000 for the hit on Cooper.

Petitioner did not merely acknowledge his involvement in Cooper's murder in his statements to investigators, however. He also knowingly and voluntarily admitted his role in the offense under oath at his change of plea hearing. And, perhaps most significantly, at the trial of Eugene DeLuca petitioner testified, under oath, that he had hired DeLuca to travel to Pennsylvania to kill Cooper in exchange for money. Based in large part on petitioner's sworn testimony, the jury found beyond a reasonable doubt that DeLuca was guilty of interstate murder-for-hire. Then, at sentencing, petitioner received the benefit of his sworn testimony, which both the government and this court found to be truthful, through the government's filing, and the court's granting, of a motion pursuant to U.S.S.G. §5K1.1, resulting in petitioner receiving a sentence of 240 months, which was not only below the statutory mandatory minimum of life imprisonment, but also years below the advisory guideline sentencing range of 292 to 365 months.

Petitioner's current allegations of actual innocence are directly contrary to his own statements to investigators, his own admissions at his change of plea hearing and his own sworn testimony at the trial of Eugene DeLuca. Thus, in order for a reasonable juror not to convict petitioner based on petitioner's "new information of actual innocence" that juror would have to: (1) disregard entirely petitioner's testimony, under oath, at the DeLuca trial; (2) disregard petitioner's admissions, under oath, at his change of plea hearing; (3) disregard petitioner's statements to the investigators; (4) disregard all of the other evidence that the investigators had gathered against him[9]; and, instead, (5) give credence to petitioner's unsubstantiated, unsupported assertions of actual innocence made years after the offense and defendant's conviction. The court does not believe a reasonable juror would, or could, reach any of those conclusions.

Accordingly, the court finds that petitioner has failed to show that it is more likely than not that no reasonable juror would have convicted him of murder-for-hire if presented with the "facts" underlying his actual innocence argument. Therefore, he would not be entitled to equitable tolling of the limitation period even if actual innocence could provide such a basis in certain circumstances.

Finally, to the extent petitioner requests that the court treat his untimely filed §2255 motion as a petition for habeas corpus under 28 U.S.C. §2241, his request will be denied. It is well-settled that §2255

---

[9] This other evidence includes, *inter alia*, the insurance policies petitioner had taken out on Cooper's life without Cooper's knowledge; the letters petitioner had written to the insurance companies after Cooper's death demanding payment on the policies; records showing that petitioner had used his credit card to pay for DeLuca's hotel room in Monroeville during the time period of the murder; phone records establishing that petitioner and DeLuca were in contact prior to the murders; and, surveillance video showing petitioner and DeLuca at the doughnut shop where petitioner testified he had "marked" Cooper.

motions "are the presumptive means by which federal prisoners can challenge their convictions and sentences that are allegedly in violation of the Constitution." Okereke v. United States, 307 F.3d 117, 120 (3d. Cir. 2002). Accordingly, when §2255 provides the appropriate remedy, a prisoner must avail himself of that section and, in those instances, courts generally cannot exercise jurisdiction under §2241. Nichols v. United States, 2012 WL 1184041 (3d Cir., April 10, 2012).

Although §2255(e) does provide a statutory exception to this jurisdictional rule where §2255 is "inadequate or ineffective to test the legality of detention," a §2255 motion is not inadequate or ineffective merely because the petitioner cannot meet the stringent gate-keeping requirements of §2255. Id. Rather, "proper use of §2241 as a substitute for §2255 is limited to rare circumstances, such as when a petitioner 'had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law [negated].'" Delgado v. Zickefoos, 430 Fed. Appx. 86, 87 (3d Cir. 2011).

Accordingly, the fact that petitioner now is barred from filing a §2255 motion because the limitation period has run does not render §2255 inadequate or ineffective, as "'[i]t is the inefficacy of [§2255], *not the personal inability to use it*, which is determinative.'" Id.; quoting Cradle v. United States ex rel. Miner, 290 F.3d 536, 538 (3d Cir. 2002). Accordingly, petitioner is not entitled to use §2241 as a substitute for his untimely motion under §2255, and his request to do so will be denied.

Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit directs that when a final order denying a motion under §2255 is entered, a determination of whether a certificate of appealability should issue also shall be made. The issuance of a

AO 72
(Rev. 8/82)

- 17 -

certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals." Barefoot v. Estelle, 463 U.S. 880, 893 (1983) (setting forth standards for certificate of probable cause).

Congress has mandated that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). Where, as here, the court denies relief on procedural grounds, a petitioner is entitled to a certificate of appealability only if he can demonstrate both that jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the court is correct in its procedural ruling. See, Slack v. McDaniel, 529 U.S. 473, 484 (2000); Bivings v. Wakefield, 316 Fed. Appx. 177, 179 (3d Cir. 2009).

Here, the court is satisfied that no reasonable jurist would argue that a §2255 petition filed two-and-a-half years beyond the limitation period, with no viable basis for equitable tolling, is not time barred. Slack, 529 U.S. at 484. Nor is it reasonably debatable that petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the court believes that a certificate of appealability should not issue in this case. See Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996).

For the reasons set forth above, petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 will be denied.

An appropriate order follows.

Dated: December 12, 2012

/s/ Gustave Diamond
Gustave Diamond
United States District Judge